UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOAYED SHAMMO and MARIA SANCHEZ,<br><br>      Plaintiffs,<br><br>      v.<br><br>KANZAMAN, INC., and HERMIZ YOUNAN,<br><br>      Defendants. | No. 13 C 2366<br><br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Moayed Shammo and Maria Sanchez ("Plaintiffs") filed a complaint against Defendants Kanzaman, Inc. and Hermiz Younan ("Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Act, 820 ILCS 105/1, *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("IWPCA"). Plaintiffs now move for summary judgment. Plaintiffs' motion for summary judgment is denied in part and granted in part.

### I. FACTUAL BACKGROUND

Shammo and Sanchez have been employed by Defendants Kanzaman, Inc. and Hermiz Younan at "Kan Zaman," a Lebanese restaurant located at 617 North Wells Street, Chicago, Illinois. As restaurant manager, Hermiz Younan ("Younan") is responsible for the day-to-day operation of the restaurant and exercises his authority to hire, fire, direct, and supervise the work of restaurant employees. Younan also performs banking and check writing, orders necessary supplies, selects vendors, schedules employees, and determines how much to pay kitchen employees. Defendants paid all employees, except Hermiz Younan, Elias Younan (President of

1

Kanzaman and son of Hermiz Younan), Ismail Wardah, and Shammo, in cash and did not maintain time and payroll records for any employees, including hourly employees. Kanzaman also does not maintain any written employee job descriptions.

Shammo, an experienced cook having worked at Kan Zaman since its opening in 2004, worked in the kitchen and was scheduled for and completed 65 hours per week, including permitted breaks. Shammo had various duties, including cooking and preparing food, training other cooks through his example, directing other cooks to prepare food and clean, cleaning and closing up the kitchen. Defendants paid Shammo $700.00 per week in wages prior to July 2012 and $750.00 per week after July 2012. Shammo was not compensated in overtime wages for time worked in excess of a 40-hour workweek. Maria Sanchez, Shammo's wife, also worked in the kitchen full time as a cook.

Other cooks employed by Defendants were paid the following amounts:

| Employee | Position | Hourly Rate |
| --- | --- | --- |
| Salam Yalda | Cook | $14.10 |
| Salam Yalda | "Kitchen Manager" | $13.04 ($600 per week/46 hours) |
| Ismael Wardah | Cook | $13.50 |
| Alan Odeesho | Cook | $14.10 ($550 per week/39 hours) |
| Georgis Dawood | Cook | $11.87 |
| Nerai Gorgees | Cook | $13.19 |
| Louis (LNU) | Cook and Kitchen Prep | $12.50 |
| Plaintiff Maria Sanchez | Cook | $11.42 |

On December 18, 2012, a dispute related to the amount of chicken Sanchez was preparing for lunch escalated and resulted in the termination of Plaintiffs' employment with Defendants. At the time Plaintiffs' employment ended, Defendants owed Shammo for one day's wages plus three hours and Sanchez for between three to fourteen hours. Younan testified that, at the time, he did not have cash on hand to compensate Sanchez but that he intended to pay her at a later time. Younan attempted to have a check in the amount of $200 made out to Shammo delivered to him to compensate Shammo for one day and three hours worked, which Shammo did not accept. Younan testified that the check was meant only for Shammo, but later claimed that he thought it would also compensate Sanchez for the three hours she worked.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to

establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003)(citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

### III. DISCUSSION

1.     Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL")

The FLSA requires a covered employer to pay time-and-a-half to employees who work more than 40 hours per week. 29 U.S.C. § 207(a)(1). However, an employer need not do so for an employee working "in a *bona fide* executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To establish that an employee is to be classified under the executive exemption, an employer bears the burden of proving the following prerequisites: (1) the employee is paid a salary of $455 or more per week; (2) the employee's "primary duty" is management; (3) the employee's job includes customary and regular direction of at least two other employees; and (4) the employee has the authority to either hire or fire other employees or his suggestions regarding hiring and firing of other employees are accorded "particular weight." 29 C.F.R. § 541.100 (2004); *Tamas v. Family Video Movie Club, Inc.*, 2013 WL 1286693, *3 (N.D.Ill. Mar. 28, 2013); *Shaw v. Prentice Hall Computer Publ'g,* 151 F.3d 640, 642 (7th Cir.1998) (holding, in the context of whether an employee fell under the FLSA's protections, that employer bears the burden of proving that employee was exempt). A violation of the IMWL is contingent on establishing a violation under the FLSA. *Kennedy v. Commonwealth Edison*

*Co.*, 410 F.3d 365, 376 (7th Cir.2005).

Defendants do not dispute that they are "employers" under the FLSA and IMWL.

Defendants concede that Shammo was scheduled to work and did work 65 hours per week, including time for breaks, but claim that they are exempt from paying Shammo overtime wages under the FLSA because Shammo is a kitchen manager employed in an executive capacity. It is undisputed that Shammo was paid more than $455 per week and that he regularly directed other kitchen employees. The central issues in dispute are (1) whether Shammo's "primary duty" was management, and (2) what, if any, influence Shammo had in hiring and firing other employees.

> A. Shammo's "Primary Duty"

In determining Shammo's "primary duty," to wit, "the principal, main, major, or most important duty that [Shammo] performs," courts must assess "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a) (2004). The Department of Labor gave guidance that factors to consider include, but are not limited to, (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. An employee whose primary duty is to complete non-exempt tasks is not an exempt executive even if he directs the work of other employees just because he occasionally has some responsibility for directing the work of other nonexempt employees. 29 C.F.R. § 541.106(c) (2006). If a genuine dispute of fact remains as to the nature and scope of Shammo's primary duty, summary judgment must be denied.

It is undisputed that Shammo is a highly experienced cook who had worked at Kan Zaman since its opening in 2004. Throughout his employment, Shammo fulfilled his duties as a cook until termination and appears to have even taken pride in his specialized expertise in cooking certain menu items. As an experienced employee, Shammo was viewed as a leader by his fellow kitchen staff, trained newer cooks in food preparation and cooking, and directed the kitchen. There is no dispute that in completing these tasks, Shammo spent time doing both exempt and non-exempt duties, both of which were seamlessly interwoven. Shammo worked side by side with the cooks, preparing and cooking the various dishes the restaurant provided. Defendants essentially assert that Shammo's non-exempt cooking duties were exempt "management" duties because other cooks learned by watching him. Defendants do not argue that Shammo completed any solely "exempt" duties, such as interviewing job applicants, conducting formal trainings, or performing evaluations of kitchen employees; rather, Defendants contend that Shammo led, and thus managed, by example when completing "non-exempt" duties.

There is no question that Shammo's role as a trainer and leader of the kitchen staff allowed for the efficient running of Kan Zaman's kitchen. Defendants, I find, appreciated that Shammo's leadership role in the kitchen was more important to Kan Zaman's success than the "non-managerial" food preparation and cooking tasks Shammo completed. *Tamas v. Family Video Movie Club*, 2013 WL 1286693 (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir.1990).)(finding that the relative importance of exempt duties is analyzed from the employer's perspective). It is in acknowledgment of Shammo's skill and knowledge that Defendants gave Shammo considerable freedom in running the kitchen. There is, however, little evidence presented that Shammo's leadership role in the kitchen was anything more than Defendants

6

taking advantage of the natural consequence of Shammo being the most experienced, skilled cook with leadership skills. Defendants did not indicate that they formalized Shammo's role, provided him with management training, or had him wear anything identifying himself as "management."

Shammo was never compensated for such "managerial" tasks over and above what the regular Kan Zaman cooks were paid. Shammo was compensated $750 per week for approximately 65 hours of work at the time of his termination, which includes permitted breaks.[1] Shammo's salary, then, worked out to $11.53 per hour, an hourly rate that was lower than every cook, excepting his wife who made $11.42 per hour as a cook. Shammo would not receive this full $750 if he did not work the full scheduled shift. Defendants, themselves, use the $11.53 per hour rate to calculate Shammo's compensation for the last day and three hours he worked immediately prior to termination.[2] Even comparing salaries, rather than hourly wages, as Defendants suggest is appropriate, Shammo was compensated less than other salaried "exempt" and "non-exempt" employees. Cook and now Kitchen Manager Salam Yalda, who was trained by Shammo, earned $600 per week for 46 hours ($13.04 per hour) as a Kitchen Manager (and $14.10 per hour as a Cook) and Alan Odeesho, a non-exempt Cook, earned $550 per week for only 39 hours of work ($14.10 per hour). Comparing salaries or hourly wages, Shammo was compensated at a lower rate than other employees for the amount of work performed.

While Shammo's experience as a cook may have resulted in him being a leader in the kitchen, assessing the nature of his position as a whole, I find that Shammo's primary duty was not "management."

---

[1] Defendants deny that Shammo worked the 65 scheduled hours per week because it does not necessarily include breaks and so is not accurate. Defendants do not substantiate with any evidence or even contend that Shammo took improper, disallowed breaks.

[2] Defendants argue that Shammo was fully compensated for his last day of employment using a calculation that he was owed $125 for one full day plus $34.59 for three hours worked (multiplying $11.53 per hour by three hours).

B.  Shammo's Authority to Hire or Fire

Jose Ivan Hernandez, a busser at Kan Zaman, testified that he believed Shammo hired people, like an occasional dishwasher, and would tell Younan when he didn't like an employee and that the employee would then be fired. Assuming *arguendo*, that Shammo brought in a temporary dishwasher in a crunch or found an employee for Younan to hire, this does not amount to Shammo having hiring authority. It is undisputed that Shammo did not interview job applicants, set compensation, or dictate the kitchen schedule. Any "managerial" powers Shammo had been given were subordinated to Younan's authority. Younan had the final call as to hiring and firing decisions, even if Younan asked for or considered Shammo's opinion on rare occasions. Any deference Younan may have given to Shammo was likely due to his own understanding that Shammo had been one of his most valued employees and motivated by a desire to keep him happy. Ultimately, it was Younan—and only Younan—that had the authority to make these final determinations. Shammo was not an exempt "*bona fide* executive" under the FLSA, and Defendants are required to pay Shammo for overtime wages.

2.  Illinois Wage Payment and Collection Act ("IWPCA")

Plaintiffs maintain a claim against Defendants under the IWPCA for unpaid wages worked prior to termination of their employment. It is undisputed that upon termination, Defendants owed compensation to both Shammo and Sanchez. Defendants attempted to deliver a check to Shammo for $200, which Shammo refused. The parties dispute whether the check was sufficient. Parties agree that Shammo was owed compensation for one day and three hours, totaling $159.59, but dispute how many hours of compensation Sanchez was owed upon termination. Though Defendants concede that Sanchez was owed at least three hours of wages at $11.42 per hour for a total of $34.26, Plaintiffs maintain that Sanchez was owed wages for 14

hours of work. The number of hours Sanchez worked is a disputed fact relevant to determining what wages are owed to Plaintiffs under the IWCPA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in part with respect to its claim under the FLSA and denied in part with respect to its claim under the IWCPA.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 15, 2015